UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-23176-CIV-GRAHAM/DUBÉ

SHELLY DANIELS,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #31) and the Motion for Summary Judgment filed by the Defendant (D.E. #36) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff, Shelly Daniels (hereinafter "Daniels" or "Plaintiff").

## I. FACTS

On May 2, 2005 and July 16, 2007, the Plaintiff filed applications for supplemental security income and disability insurance benefits. (R. 109-111, 305-308).[1] The applications were denied initially and on reconsideration. (R. 35-38, 63-72, 295-302, 309-311). An initial hearing was held on November 2, 2007. (R. 312-335). Following the hearing, an ALJ found that the Plaintiff was not disabled. (R. 23-34). The Appeals Council denied the Plaintiff's request for review. (R. 19-22). On

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

March 9, 2009, this Court remanded the Plaintiff's case for a new hearing based on the Commissioner's request. (R. 336-339). A new hearing was held on July 7, 2009. (R. 402-417). Following the hearing, the ALJ issued a decision finding the Plaintiff not disabled. (R. 6-18). The ALJ's decision is the final decision subject to judicial review.

The Plaintiff, age 48 at the time of the hearing on July 7, 2009, testified she has an eleventh grade education and previously worked selling calling cards, and also worked at LA Fitness. Daniels further testified she went back to work 4 years prior to the hearing and was currently working part time at LA Fitness. (R. 405). According to the Plaintiff, she works 5 days a week, 3 hours a day for a total of 15 hours a week watching children at the gym. She makes $7.00 an hour but cannot work more because of stress, anxiety and depression. The Plaintiff stated she does not have any physical problems and sees a doctor every three months. (R. 406). Daniels explained she sees the doctors so she can receive medication and attend individual therapy sessions which last an hour each session. (R. 406-407).

Daniels stated she feels better after a one hour session and she currently takes five different medications. The Plaintiff claimed she takes Lexapro, Aricept, Valtrex, Geodon and Trazadone.(R. 407). The Plaintiff further claimed she sleeps 8 hours a night when she takes the Trazadone, but cannot sleep without medication. The Plaintiff also stated she lives alone. (R. 408). According to Daniels, she quit drinking alcohol and using marijuana four years ago. (R. 408-409). In addition to working 3 hours a day, the Plaintiff testified she washes dishes, does the laundry and performs other housework. The Plaintiff further testified she does not cook and relies on her children to do the cooking. Daniels stated she spends about three hours a day watching television; will sometimes read a book or magazine; and does not attend church. (R. 409).

Daniels submitted she takes a nap for about an hour each day. (R. 410). According to the

Plaintiff, she was hospitalized in 2003 for two weeks due to depression at Atlantic Shores Hospital because she attempted suicide. (R. 410-411). The Plaintiff further stated that after being discharged from Atlantic Shores, she began going to Christian Behavioral where she has been treated since. Daniels said her diagnosis is bipolar disorder, depression and insomnia. The Plaintiff testified she does not work more than 15-hours a week because she cannot handle it as a result of the stress and anxiety. (R. 411). The Plaintiff testified she misses work because of her conditions about three times a month. The Plaintiff also testified she has tried to work more than 15 hours but can not because she had anxiety attacks. Daniels described the attacks as, "[s]haky, sweaty, tightening of the chest," and said it takes her about an hour to calm down after having an attack. (R. 412).

The Plaintiff said her condition has become better since 2003. Daniels explained that in 2003 she was having anxiety attacks about 5 or 6 times a week but currently only has them once a week. The Plaintiff said she started seeing her therapist every three months about three months prior to the hearing, but before that she was being seen every month. (R. 413). The Plaintiff explained she started working because she needed to pay her bills and her doctor "initiated" her working for three hours a day. (R. 414). Daniels testified that in order to stay sober, she attends AA or NA meetings and has been doing so for five years. (R. 414-415).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following medically determinable impairments: depression and history of marijuana and

alcohol abuse, in remission. (R. 11). The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R. 11-12). The ALJ determined that the Plaintiff's impairments do not cause more than a minimal limitation in the Plaintiff's ability to perform basic work activities, and thus, are non-severe. (R. 13, 17). As such, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant

work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred in finding the Plaintiff's depression to be a non-severe impairment. Specifically, the Plaintiff contends the ALJ improperly determined the Plaintiff's depression was not severe because the ALJ found that the depression did not meet or equal a listing impairment which is an analysis which should be made at step three of the sequential evaluation.

The determination of whether an impairment is severe or not severe at step two of the sequential analysis is a threshold inquiry. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). The court in McDaniel elaborated on the requirements for a finding of severity as follows:

> It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

McDaniel, 800 F.2d at 1031; see also, Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987).

With regard to the severity of the Plaintiff's depression, the ALJ stated as follows:

> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation, which have

6

> been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1)).

(R. 17). The Plaintiff's argument must fail as it is factually inaccurate and legally insufficient. First, contrary to the Plaintiff's position, the ALJ did not base the determination regarding the severity of the Plaintiff's depression on the listing requirements. Rather, the ALJ applied the psychiatric review technique which is required by Statute and the Eleventh Circuit. The ALJ's analysis was as follows:

> As indicated above, the first functional area is activities of daily living. In this area, the claimant has showed only mild limitation. As stated by the claimant in her testimony and in the Adult Function Report - Third Party, Exhibit 47E), she performs at the almost normal level of activities of daily living. The claimant's sister submitted a Function Report, as third party. In the report she states that the claimant is able to take care of her personal needs with no problem. She also states that she takes care of her pets. She takes the pets out for walks, bath and feeds them (Exhibit 46E). She is also able to prepare meals on a daily basis (Exhibit 45E). The third party also reported that the claimant goes shopping, takes people to places, go to meetings, visits Starbucks and the gym (Exhibit 43E). The next functional area is social functioning. In this area, the claimant has showed also mild limitations. I find support for this finding in the claimant's reported activities of going out to shop, participate at meetings, go to Cafes and interacts socially (Exhibit 43E). She also gets along well with authority figures (Exhibit 41E). These are activities that require social contacts. In addition, the third party reported that she has no problems with family, friends or neighbors (Exhibit 42E). The third functional area is concentration, persistence or pace. In this area, the claimant has showed mild limitations. I found support for this finding in the reports prepared by a third party, in where she indicates that the claimant can pay attention for a long time (Exhibit 42E). She can follow well the spoken instructions and has the ability to manage money (Exhibit 43E). She is also able to drive a car (Exhibit 44E), which requires concentration and attention to details (Exhibit 44E). The fourth functional area is episodes of decompensation. In this area, the claimant had experienced no episodes of decompensation. She only had one psychiatric hospitalization, during the year 2003, long before the alleged onset date of disability (Exhibit 63F).

(R. 11-12). The ALJ concluded that the "paragraph B" criteria were not satisfied and the evidence

failed to establish the presence of the "paragraph C" criteria. (R. 12).

If a claimant presents a colorable claim of mental impairment, the ALJ must either complete a Psychiatric Review Technique Form ("PRTF"), and attach it to the decision or incorporate the analysis contained in the form into the findings and conclusions. See, Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005); 20 C.F.R. §404.1520a. A failure to comply with this requirement necessitates a remand. Moore, 405 F.3d at 1214.

The applicable regulation sets out the following scale for rating the four functional areas contained in the PRTF:

> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence or pace), we will use the following five-point scale: None, mild, moderate, marked and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. §404.1520a (c)(4). Finally, the regulations require:

> (1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.

20 C.F.R. §404.1520a (d)(1).

As noted above, the ALJ determined that the Plaintiff had mild limitations in activities of daily living, social functioning, and concentration, persistence or pace; and no episodes of decompensation. Therefore, in accordance with the regulations, the ALJ found the impairment to be "not severe." As such, the Court finds the determination was not made on the basis of the listed impairments and the

ALJ's decision was supported by substantial evidence.

The Plaintiff's next point of contention is that the ALJ failed to accord proper weight to the opinion of the Plaintiff's treating therapist. More specifically, the Plaintiff contends the ALJ erred in discounting the opinion of Ms. Canchola,[2] a registered nurse practitioner. A nurse practitioner, is considered an "other source" by the statutes which require an evaluation of same as follows:

> (d) Other sources. In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to–
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);
>
> (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
>
> (3) Public and private social welfare agency personnel; and
>
> (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

20 C.F.R. § 404.1527(d). However, just as the case with a treating physician, the opinion of a nurse practitioner can be rejected by a showing of good cause. Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding; or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

---

2. Ms. Canchola is misspelled throughout the transcript and ALJ report as Ms. Concholo.

In the instant matter, the ALJ rejected Ms Canchola's opinion and stated as follows:

> I do not accept the determinations and opinions made by Ms. Canchola, given that she is not a medical physician, rather an advanced registered nurse practitioner. Moreover, in short, the claimant's reported activities of daily living stand in marked contrast to the conclusions presented in Ms. Canchola's assessments and tends to indicate that the claimant has no severe mental impairments.

(R. 16).

On October 18, 2007, Ms. Canchola completed a Mental Capacity Assessment. (R. 189-194). The Assessment found marked restriction in the Plaintiff's ability to carry out very short and simple instructions; sustain an ordinary routine without special supervision; and make simple work-related decisions. All other areas of sustained concentration and persistence were found to have extreme limitations. (R. 189). The Assessment further found marked restrictions in the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; and the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. All other areas of social interaction were found to have extreme restrictions. In the area of adaptation, the Assessment found the Plaintiff had marked restrictions in the ability to be aware of normal hazards and take appropriate precautions. All other areas of adaptation were deemed to have extreme restrictions. (R. 190).

On the same day, Ms. Canchola completed a 12.04 Affective Disorders form and found that under the "A" criteria the Plaintiff had depressive, manic and bipolar syndromes. (R. 195). In the "B" criteria, she found the Plaintiff had extreme restrictions of activities of daily living; difficulties in maintaining social functioning; and repeated episodes of decompensation, each of extended duration; and marked difficulties in maintaining concentration, persistence or pace. (R. 191).

As noted by the ALJ and Ms. Canchola's own treatment notes, the record does not support the extreme limitations given by Ms. Canchola's Assessment dated October 18, 2007. Namely, Ms. Canchola's treatment notes demonstrate the Plaintiff was stable, able to work and responded well to medications. (R. 396-397, 399). Those notes do not provide any indication of such extreme limitations. Additionally, contrary to the assertion that the Plaintiff was repeatedly experiencing episodes of decompensation, the record does not show any hospitalizations during the relevant time period. The record does show that the Plaintiff spent the day shopping and job hunting (R. 139); tended to her pets by bathing, feeding and walking them (R. 140); was able to prepare her own meals on a daily basis (R. 141); is able to drive and shop for clothing, food and personal items; could pay the bills, count change, manage her money (R. 142); and would go to cafes, meetings, Starbucks, and the gym. (R. 143). Essentially, the Plaintiff lived independently and cared for herself. As noted above, the Plaintiff also testified she performs household chores, lives alone and works three hours a day part time. (R. 406, 408-409). The record simply does not support the limitations placed on the Plaintiff by Ms. Canchola and the ALJ properly articulated the good cause necessary to reject her opinion. As such, it is the opinion of this Court that the ALJ's decision is supported by substantial evidence.

The Plaintiff's final point of contention is that the ALJ erred in failing to employ the services of a vocational expert.

Testimony from a vocational expert is highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disability claimants. Holley v. Chater, 931 F. Supp. 840, 851, (S.D. Fla. 1996). Further, the ALJ has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant. Foote v. Chater, 67 F. 3d 1553,

1558 (11th Cir. 1995), citing Allen v. Sullivan, 880 F. 2d 1200, 1201 (11th Cir. 1989). However, first, the claimant bears the initial burden of proving that she is unable to perform her previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). The Court has already determined that the ALJ properly ended the evaluation at step two, thus the use of a vocational expert is not required.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #31) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #36) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Donald L. Graham, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 22 day of June, 2010.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE